SHERYL W. LEICHENGER (SBN 161688)
sleichenger@selmanlaw.com
SELMAN LEICHENGER EDSON
HSU NEWMAN & MOORE LLP
10880 Wilshire Blvd., Suite 1200
Los Angeles, CA 90024
Telephone: 310.445.0800

BRIDGET A. MOORHEAD (SBN 166298)
bmoorhead@selmanlaw.com
225 Broadway, Suite 1460
San Diego, CA 92101
Telephone: 619.564.3600

Attorneys for MESA UNDERWRITERS SPECIALTY INSURANCE COMPANY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MESA UNDERWRITERS SPECIALTY INSURANCE COMPANY, A New Jersey Corporation,<br><br>Plaintiff,<br><br>v.<br><br>WEBER ENTERPRISE TRUCKING CORPORATION, a California corporation; SHANE JOSEF WEBER, an Individual; FOREST LAWN MEMORIAL-PARK ASSOCIATION, a California non-profit corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:24-cv-03720<br><br>MESA UNDERWRITERS SPECIALTY INSURANCE COMPANY'S COMPLAINT FOR DECLARATORY RELIEF AND REIMBURSEMENT |

Plaintiff MESA UNDERWRITERS SPECIALTY INSURANCE COMPANY ("MUSIC"), by and through its counsel Sheryl W. Leichenger, Esq. of Selman Leichenger Edson Hsu Newman Moore, LLP, for its Complaint for Declaratory Relief and Reimbursement against defendants WEBER ENTERPRISE TRUCKING CORPORATION, SHANE JOSEF WEBER, and FOREST LAWN MEMORIAL-PARK ASSOCIATION, alleges as follows:

# INTRODUCTION

1. This is an action for declaratory judgment and reimbursement regarding commercial general liability policies MUSIC issued to WEBER ENTERPRISE TRUCKING CORPORATION in relation to an underlying lawsuit filed against the Weber defendants.

# PARTIES

2. MUSIC is a corporation organized and incorporated under the laws of the State of New Jersey with its principal place of business in Branchville, New Jersey.

3. WEBER ENTERPRISE TRUCKING CORPORATION ("Weber Enterprise") is a corporation organized and existing under the laws of the State of California and is or was doing business in the County of Los Angeles, State of California.

4. On information and belief, SHANE JOSEF WEBER ("Weber") is the Chief Executive Officer and Chief Financial Officer of Weber Enterprise and an individual doing business in the City of Burbank, State of California.

5. FOREST LAWN MEMORIAL-PARK ASSOCIATION ("Forest Lawn") is a non-profit corporation organized and existing under the laws of the State of California and is or was doing business in the County of Los Angeles, State of California.

6. MUSIC alleges that Forest Lawn as a third-party claimant and a potential judgment creditor pursuant to California Insurance Code, section 11580, with respect to the MUSIC Policies, may claim rights under the Policies issued to Weber Enterprise for damages alleged in the Underlying Action described below, and as such, is a necessary party so that the declaration of the parties' rights and duties will be binding upon all defendants.

## JURISDICTION AND VENUE

7. Jurisdiction of this action is founded upon 28 U.S.C. §1332, as there is complete diversity of citizenship between MUSIC and defendants in this matter and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, as more fully alleged below. This Court also has jurisdiction over these claims under the Declaratory Relief Act as codified in 28 U.S.C. §2201.

8. Venue is proper in the Central District of California, Western Division, pursuant to 28 U.S.C. §§1391(b)(1) and (c)(2) in that the defendants are subject to personal jurisdiction in this district at the time the action is commenced. Venue is also proper in this district pursuant to 28 U.S.C. §1391(b)(2) as a substantial part of the events giving rise to the claim occurred in this district, including the underlying litigation.

## THE UNDERLYING ACTION

9. On or about June 2, 2020, Weber Enterprise entered into a Soil Agreement with Forest Lawn wherein Forest Lawn was to make up to 1 million cubic yards of compacted fill materials ("soil") available to Weber Enterprise at two stockpiles. In return, Weber was granted the exclusive right to remove and sell the soil.

10. Weber filed a complaint against Forest Lawn in the Superior Court for the County of Los Angeles, in Case No. 21STCV17999, captioned *Weber Enterprise Trucking Corporation v. Forest Lawn Memorial-Park Association* (hereinafter referred to as "Underlying Action"). Weber Enterprise alleged Forest Lawn failed to make 1 million cubic yards of soil available and failed to reimburse Weber Enterprise for the cost to remove and separate steel and other materials from the soil. A true and correct copy of the Complaint is attached hereto as **EXHIBIT A** and incorporated by reference as though fully stated herein.

11. On or about July 13, 2021, Forest Lawn filed a Cross-Complaint against Weber Enterprise and Weber in the Underlying Action, which was amended on or about October 21, 2022, Forest Lawn filed a First Amended Cross-Complaint ("FACC" or "operative cross-complaint"). A true and correct copy of the First Amended Cross-Complaint in the Underlying Action is attached hereto as **EXHIBIT B** and incorporated by reference as though fully stated herein. The FACC alleges that Weber Enterprise and Weber used the Forest Lawn property as a foreign materials dumpsite to dump construction and demolition debris and other foreign materials. The FACC alleges that the "estimated cost for Forest Lawn's removal of impermissibly dumped materials on the Forest Lawn property exceeds $1,000,000." (**EXHIBIT B**, ¶ 20.)

12. On September 14, 2023, the Court in the Underlying Action granted summary adjudication on Forest Lawn's Sixth Cause of Action for Declaratory Relief regarding termination of the Soil Agreement in the FACC finding that Forest Lawn properly terminated the Soil Agreement based on Weber Enterprise's failure to perform in accordance with the terms of the Soil Agreement by importing sand, concrete, and other waste products onto the property without written approval as required by the Soil Agreement.

## THE INSURANCE POLICY

13. MUSIC issued Commercial General Liability Policy No. MP0004017004804, effective August 2, 2019 to August 2, 2020, to "Weber Enterprise." The limit of liability is $1,000,000 per occurrence. A true and correct copy of said policy is attached hereto as **EXHIBIT C** and is incorporated by reference as though fully set forth herein (hereinafter referred to as "the 2019-2020 Policy").

14. MUSIC issued Commercial General Liability Policy No. MP0004017005426, effective August 2, 2020 to August 2, 2021, to "Weber

Enterprise." A true and correct copy of said policy is attached hereto as **EXHIBIT D** and is incorporated by reference as though fully set forth herein (hereinafter referred to as "the 2020-2021 Policy"). The 2019-2020 and 2020-2021 Policies are hereinafter collectively referred to as "the Policies".

15. The Insuring Agreement to Coverage A. in the Policies states, in relevant part:

> COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY
>
> 1. Insuring Agreement
>
>    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. . . .
>
>    b. This insurance applies to "bodily injury" and "property damage" only if:
>
>       (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory" . . . .
>
> [**Exhibits C and D**.]

16. The Policies define "occurrence" in Section V. to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." [**Exhibits C and D**.]

17. The Policies contain the following relevant exclusions in Coverage A.:

> 2. Exclusions
>
> This insurance does not apply to:
>
> a. Expected Or Intended Injury
>
> "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.
>
> * * *
>
> j. Damage To Property
>
> "Property damage" to:
>
> * * *
>
> (5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or
>
> (6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.
>
> * * *

> l. Damage To Your Work
>
> "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".
>
> m. Damage To Impaired Property Or Property Not Physically Injured
>
> "Property damage" to "impaired property" or property that has not been physically injured, arising out of:
>
> (1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
>
> (2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

[**Exhibits C and D**.]

18. The term "impaired property" is defined as:

> 8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:
>
> a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or
>
> b. Your have failed to fulfill the terms of a contract or agreement;
>
> if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

[**Exhibit C and D.**]

19. Exclusion m excludes coverage for physical injury or loss of use to "impaired property" arising out of a defect, deficiency, inadequacy or dangerous condition in Weber's work.

20. The Policies contain an Asbestos Exclusion that states:

> THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
>
> **EXCLUSION – ASBESTOS**
>
> This endorsement modifies insurance provided under the following:
>
>   COMMERCIAL GENERAL LIABILITY COVERAGE FORM
>
>   * * *
>
> In consideration of the premium charged, it is understood and agreed that this policy will not provide coverage, meaning indemnification or defense costs arising out of:
>
>   1. Asbestos or any asbestos related "bodily injury", or "property damage" or
>
>   2. Any alleged act, error, omission, or duty involving asbestos, its use, exposure, presence, existence, detection, removal, elimination, transportation, disposal or avoidance or
>
>   3. The use, exposure, presence, existence, detection, removal, elimination, or avoidance of asbestos in any environment, building or structure.
>
> All other terms and conditions of this policy remain unchanged.
>
> [**Exhibits C and D**.]

21. The Policies contain a Total Pollution Exclusion with a Hostile Fire Exception that states:

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## TOTAL POLLUTION EXCLUSION WITH HOSTILE FIRE EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion f. under Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability is replaced by the following:

This insurance does not apply to:

f.  Pollution

   (1)  "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time. This exclusion does not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

   (a)  At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

   (b)  At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for,

> monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".
>
> (2) Any loss, cost or expense arising out of any:
>
> (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or
>
> (b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

[**Exhibits C & D**.]

22. "Pollutants" is defined in the Policies as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed."

23. The Policies contain an Exclusion – Real Estate Development Property that states:

> THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
>
> **EXCLUSION – REAL ESTATE DEVELOPMENT PROPERTY**
>
> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE FORM

> This insurance does not apply to "bodily injury", "property damage", "personal and advertising injury" or "medical expense" arising out of, caused by, or in any way connected with:
>
>> Real Estate Development Property, meaning land in any stage of active development which includes site preparation as well as actual construction activities.
>
> All other terms and conditions of this policy remain unchanged.
>
> [**Exhibits C and D**.]

24. The Insuring Agreement to Coverage B. to the Policies states, in relevant part:

> COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY
>
> 1. Insuring Agreement
>
>> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. . . .
>>
>> b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your

> business but only if the offense was committed in the "coverage territory" during the policy period.
>
> [**Exhibits C and D**.]

25. The Policies define "personal and advertising injury" in Section V as:

> 14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
>     a. False arrest, detention or imprisonment;
>     b. Malicious prosecution;
>     c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
>     d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
>     e. Oral or written publication, in any manner, of material that violates a person's right of privacy;
>     f. The use of another's advertising idea in your "advertisement"; or
>     g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".
>
> [**Exhibits D and E**.]

# THE CONTROVERSY

26. Weber Enterprise and Weber tendered the defense and indemnity of Forest Lawn's FACC in the Underlying Action to MUSIC, which MUSIC accepted under a reservation of rights.

27. MUSIC contends Forest Lawn's FACC in the Underlying Action does not allege the potential for coverage under the Policies issued to Weber Enterprise.

28. MUSIC is informed and believes and thereon alleges that Weber Enterprise and Weber dispute MUSIC's contention.

29. An actual controversy has arisen and now exists between MUSIC, on the one hand, and Weber Enterprise and Weber, on the other, concerning MUSIC's obligation to defend Weber Enterprise and Weber against the FACC in the Underlying Action under the Policies.

# FIRST CAUSE OF ACTION

## (Declaratory Relief – No Duty to Defend)

## Against All Defendants

30. MUSIC incorporates by reference, as if fully set forth herein, the preceding paragraphs.

31. MUSIC contends it does not have a duty to defend Weber against the operative Cross-Complaint in Underlying Action because the Cross-Complaint does not allege the requirement of "property damage" or an "occurrence" under Coverage A. to the Policies; the alleged damages are excluded pursuant to exclusions 2.a., 2.j.(5), 2.j.(6), 2.l., and 2.m. to Coverage A., the Asbestos Exclusion; the Total Pollution Exclusion; the Real Estate Development Property Exclusion; and the FACC does not allege a "personal and advertising injury" offense as enumerated under the definition to the Policies.

/ / /

/ / /

4096 104575 4867-2149-4454 .v1

32. MUSIC is informed and believes and thereon alleges that Weber disagrees with MUSIC's contentions as set forth herein and has a duty to defend the Underlying Action.

33. An existing controversy exists between MUSIC and Weber relating to the rights and duties of MUSIC under the Policies. MUSIC therefore requests a declaration from this Court that MUSIC has no duty to defend Weber against the claims asserted in the Underlying Action.

34. Such a declaration is necessary and appropriate because MUSIC has no adequate remedy at law, and by reason of such delay, will suffer great and irreparable injury. Such a declaration is appropriate in order that MUSIC and Weber may ascertain their respective rights and duties under the Policy for the Underlying Action. Such controversy is incapable of resolution without judicial adjudication.

## SECOND CAUSE OF ACTION

### (Declaratory Relief – No Duty to Indemnify)

### Against All Defendants

35. MUSIC incorporates by reference, as if fully set forth herein, the preceding paragraphs.

36. MUSIC contends it does not have a duty to indemnify Weber against the FACC or operative cross-complaint in the Underlying Action because the FACC does not allege the requirement of "property damage" or an "occurrence" under Coverage A. to the Policies; the alleged damages are excluded pursuant to exclusions 2.a., 2.j.(5), 2.j.(6), 2.l., and 2.m. to Coverage A., the Asbestos Exclusion; the Total Pollution Exclusion; the Real Estate Development Property Exclusion; and the operative Cross-Complaint does not allege a "personal and advertising injury" offense as enumerated under the definition to the Policies.

37. MUSIC is informed and believes and thereon alleges that Weber Enterprise and Weber disagree with MUSIC's contentions as set forth herein and has a duty to indemnify the Underlying Action.

38. An existing controversy exists between MUSIC and Weber Enterprise/Weber relating to the rights and duties of MUSIC under the Policies. MUSIC therefore requests a declaration from this Court that MUSIC has no duty to indemnify Weber Enterprise or Weber against the claims asserted in the Underlying Action.

39. Such a declaration is necessary and appropriate because MUSIC has no adequate remedy at law, and by reason of such delay, will suffer great and irreparable injury. Such a declaration is appropriate in order that MUSIC and Weber Enterprise/Weber may ascertain their respective rights and duties under the Policies for the Underlying Action. Such controversy is incapable of resolution without judicial adjudication.

## THIRD CAUSE OF ACTION

### (Reimbursement of Defense Expenses)

### Against Weber Enterprise and Weber

40. MUSIC incorporates by reference, as if fully set forth herein, the preceding paragraphs.

41. MUSIC is defending Weber Enterprise and Weber in the Underlying Action, pursuant to a full and complete reservation of rights, including, but not limited to the right to recover any defense expenses incurred by MUSIC for uncovered claims and damages asserted against it in the Underlying Action under *Buss v. Superior Court* (1997) 16 Cal.4th 35.

42. As a matter of law, MUSIC never had a duty to defend Weber Enterprise and/or Weber for claims in the Underlying Action that were not even potentially covered under the Policies.

43. Because none of the claims asserted against Weber in the Underlying Action were potentially covered under the Policies, and because MUSIC has no obligation to provide Weber Enterprise and/or Weber with a defense to uncovered claims, MUSIC has been damaged with respect to expenses incurred for the defense of uncovered claims.

44. Accordingly, MUSIC is entitled to reimbursement from Weber Enterprise and Weber for all or portions of defense expenses in an amount to be proven at the time of trial.

## PRAYER FOR RELIEF

WHEREFORE, MUSIC prays for the following relief against each Defendant:

1. With respect to the First Cause of Action, a judicial declaration that Forest Lawn's operative Cross-Complaint against Weber Enterprise and Weber does not allege the potential for coverage and MUSIC does not have a duty to defend Weber Enterprise or Weber;

2. With respect to the Second Cause of Action, a judicial declaration that MUSIC does not have a duty to indemnify Weber Enterprise or Weber;

3. With respect to the Third Cause of Action, for reimbursement of all defense fees and costs MUSIC incurred in the Underlying Action with respect to uncovered claims and damages, in an amount to be proven at trial;

4. MUSIC's costs of suit; and

5. Such other relief the Court deems just, proper, and equitable.

DATED: May 3, 2024

SELMAN LEICHENGER EDSON
HSU NEWMAN & MOORE LLP

By: /s/*Bridget A. Moorhead*
SHERYL W. LEICHENGER
BRIDGET A. MOORHEAD
Attorneys for MESA UNDERWRITERS SPECIALTY INSURANCE COMPANY

16
COMPLAINT FOR DECLARATORY RELIEF AND REIMBURSEMENT